Jonathan B. NOLL, Appellant,

v.

ALASKA BAR ASSOCIATION, Appellee.

No. 5782.

Supreme Court of Alaska.

Aug. 13, 1982.

Mark R. Moderow, David J. Walsh, Moderow, Walsh, Sharick & Tucker, Anchorage, for appellant.

Jonathan Noll, in pro. per.

William B. Rozell, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellee.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This appeal involves the constitutionality of Alaska Bar Rule 5(1)(a) which requires that an applicant for admission to the state bar be domiciled in Alaska.[1] Jonathan Noll, who resides in Seattle and is a member of the bar in both Washington and New Jersey, applied for admission to the Alaska Bar Association (ABA) after passing the 1980 summer bar examination for attorney applicants. Although acknowledging that Noll was otherwise qualified, the Board of Governors of the ABA denied him admission solely because he failed to meet the domicile requirement imposed by Bar Rule 5(1)(a). Noll has appealed that decision contending that the domicile requirement violates the privileges and immunities clause of Article IV, Section 2 of the United States Constitution.[2] We agree.

The privileges and immunities clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens of the several States." United States Const., art. IV, § 2. In *Sheley v. Alaska Bar Association*, 620 P.2d 640 (Alaska 1980) we held that this clause prohibits a requirement that Alaska bar examination applicants establish domicile[3] in the state at least thirty days before the start of the exam. In so holding we found that the practice of law by qualified persons is a "fundamental right" protected by the privileges and immunities clause. *Id.* at 642–43. Because the thirty-day residency requirement imposed a discriminatory burden on the exercise of that right by qualified nonresidents, it triggered scrutiny under the clause. It failed to survive such scrutiny and, thus, we concluded that the requirement was unconstitutional. *Id.* at 646; *accord Strauss v. Alabama State Bar*, 520 F.Supp. 173 (N.D.Ala.1981); *Gordon v. Committee on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 397 N.E.2d 1309 (1979).

That Rule 5(1)(a) discriminates against nonresidents is not disputed. It prevents otherwise qualified applicants from becoming members of the Alaska bar, and hence from practicing law in this state,[4] solely on

---

1. Alaska Bar Rule 5(1)(a) provides:

    An applicant receiving notice that he or she has successfully passed the bar examination prescribed by the Board pursuant to Rule 4, and who has been found by the Board to be of good moral character and has in all other respects been determined eligible shall file within one year an Alaska Bar Association registration card in the form provided by the Board; *certify under oath that he or she is domiciled in the State of Alaska*; and pay prorated active membership fees for the balance of the calendar year in which he or she is admitted, computed from the day of payment.
    (Emphasis added).

2. Since we conclude that Rule 5(1)(a) violates the privileges and immunities clause, we do not address Noll's further contention, not briefed but listed in his points on appeal, that it also violates the equal protection clause of art. I, § 1 of the Alaska Constitution. *See Sheley v. Alaska Bar Association*, 620 P.2d 640, 641 n.4 (Alaska 1980).

3. Domicile requires physical presence coupled with the subjective intent to remain indefinitely. *Sheley*, 620 P.2d at 644 n.24; *see* Note, A Constitutional Analysis of State Bar Residency Requirements under the Interstate Privileges and Immunities Clause, 92 Harv.L.Rev. 1461, 1481 (1979).

4. Pursuant to the Alaska Integrated Bar Act, AS 08.08.010–.250, a person may not engage in the practice of law unless he or she is licensed to practice law in Alaska and is an active member of the ABA. AS 08.08.210(a). One who does so without satisfying this requirement is guilty of a misdemeanor. AS 08.08.230(a).

the basis of domicile at the time of registration for admission. Once admitted, a member of the bar is not required to remain domiciled in Alaska.[5] While the rule does not impose a durational residency requirement,[6] it nonetheless denies a nonresident attorney the right to practice law on a multistate basis and interferes with the practice of law by attorneys employed by multistate corporations.[7] *Stalland v. South Dakota Board of Bar Examiners*, 530 F.Supp. 155, 157 (D.S.D.1982); *see Gordon v. Committee on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 644, 397 N.E.2d 1309, 1312–13 (1979). Consequently, Rule 5(1)(a) burdens the "fundamental right" of qualified persons to practice law,[8]

and is therefore subject to scrutiny under the privileges and immunities clause.

■ Article IV, section 2 prohibits discrimination against nonresidents "where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Toomer v. Witsell*, 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, 1471 (1948); quoted with approval in *Hicklin v. Orbeck*, 437 U.S. 518, 525, 98 S.Ct. 2482, 2487, 57 L.Ed.2d 397, 404 (1978). No "substantial reason" will be found absent some showing that nonresidents are "a peculiar source of the evil" which the state's action is meant to remedy. *Id.* at 526–27, 98 S.Ct. at 2487, 57 L.Ed.2d at 405. In addition, the discrimination worked

5. The parties have stipulated that there are presently fifty-eight active members of the ABA who no longer reside or maintain an office in Alaska.

6. The ABA argues that this case thus differs from *Sheley* since Rule 5(1)(a) is a "simple" residency requirement which, unlike the durational residency requirement at issue in *Sheley*, does not impose upon the applicant a period of enforced idleness. A distinction between simple and durational residency for purposes of art. IV, § 2 analysis in a factual context identical to that involved here was rejected in *Stalland v. South Dakota Board of Bar Examiners*, 530 F.Supp. 155, 161 (D.S.D.1982), and we likewise reject it here. Our analysis in *Sheley* did not depend upon any such distinction. *Sheley*, 620 P.2d at 644 n.26; *see also Strauss v. Alabama State Bar*, 520 F.Supp. 173, 178 (N.D.Ala. 1981) ("It is not just the administrative interpretation implementing a three-week residence requirement that this court deems obnoxious; the requirement of Rule IV itself that one certified to take the examination must be a bona fide resident of Alabama without respect to the time for such residence violates the privileges and immunities clause"). Moreover, in *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) it was the simple residency requirement of the "Alaska Hire" statute that the Supreme Court found to be violative of the privileges and immunities clause. *See also Consumers Union of United States, Inc. v. Albright*, 427 F.Supp. 840 (S.D.N.Y.1977) where the district court upheld a simple residency requirement under art. IV, § 2; the Supreme Court vacated the district court's decision and remanded the case for further consideration in light of *Hicklin.* 438 U.S. 901, 57 L.Ed.2d 1144 (1978).

7. Under Civil Rule 81, an attorney who is not licensed to practice law in Alaska but who has been admitted to practice elsewhere in the United States may move "to appear and participate in a particular action or proceeding in a court of this state," provided he or she associates local counsel. Alaska R.Civ.P. 81(a)(2). While the procedure for admission pro hac vice may to a limited extent alleviate the discriminatory burden of Bar Rule 5(1)(a), we do not regard it as a realistic substitute for admission to the bar for a nonresident attorney who desires to practice law on a multistate basis. *See* Brakel & Loh, Regulating the Multistate Practice of Law, 50 Wash.L.Rev. 699, 700–06 (1975). Moreover, Rule 81 makes no provision for nonresident attorneys who wish to conduct a multistate office practice or who work for multistate corporations. *See* Smith, Time for a National Practice of Law Act, 64 A.B.A.J. 557, 559 (1978).

8. As noted in *Sheley*, the privileges and immunities clause "does not preclude some disparity of treatment between residents and nonresidents." 620 P.2d at 642. To be protected under the clause the activity must involve " 'fundamental rights,' i.e., those 'basic and essential activities, interference with which would frustrate the purposes of the formation of the Union.' " *Id., quoting Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 387, 98 S.Ct. 1852, 1862, 56 L.Ed.2d 354, 368 (1978). In *Sheley*, we concluded that the practice of law is such a "fundamental right" calling for scrutiny under the privileges and immunities clause. 620 P.2d at 642–43; *accord Stalland v. South Dakota Bd. of Bar Examiners*, 530 F.Supp. 155, 158 (D.S.D. 1982); *Strauss v. Alabama State Bar*, 520 F.Supp. 173, 177 (N.D.Ala.1981); *Gordon v. Comm. on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 644, 397 N.E.2d 1309, 1312 (1979).

upon nonresidents must "bear a substantial relationship to the particular 'evil' they are said to present." *Id.* at 527, 98 S.Ct. at 2488, 57 L.Ed.2d at 405. Only if the challenged discriminatory action surmounts both of these hurdles will it survive privileges and immunities clause scrutiny.[9] *See, e.g., Gordon v. Committee on Character & Fitness,* 48 N.Y.2d 266, 422 N.Y.S.2d 641, 645, 397 N.E.2d 1309, 1313 (1979).

■ Turning to Bar Rule 5(1)(a), the ABA argues that there are a number of reasons for requiring Alaska domicile in order to gain admission to the bar. First, it asserts that "Alaska has a legitimate state interest in imposing requirements for admission designed to ensure the competency of the state bar, to improve its knowledge of law and procedure and its familiarity with local practice, local issues and communities in Alaska." According to the ABA, this interest is served by Rule 5(1)(a) because it "requires an attorney, even if he is admitted in another state, to focus on practice in Alaska after his admission."

That the state has a strong interest in assuring that members of its bar are competent is beyond peradventure. *See In re Griffiths,* 413 U.S. 717, 722–23, 93 S.Ct. 2851, 2855, 37 L.Ed.2d 910, 916 (1976); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801 (1957). But the ABA has not demonstrated that this interest is threatened by permitting nonresident attorneys the right to practice law in this state. Requiring bar applicants such as Noll to take and pass the Alaska bar examination already provides the state a means of determining an applicant's knowledge of state substantive and procedural law. *Stalland v. South Dakota Board of Bar Examiners,* 530 F.Supp. 155, 159 (D.S.D.1982). Nor has the ABA shown that there is a relationship between familiarity with "local practice" or "local issues" and legal competence. As noted by one court, "[n]either legal competence nor ethical fitness depends upon cultural provincialism." *Keenan v. Board of Law Examiners,* 317 F.Supp. 1350, 1359 (E.D.N.C.1970). In short, there has been no showing "that nonresidents pose a 'peculiar source of evil' to the ideal of maintaining a bar of qualified attorneys." [10] *Strauss v. Alabama State Bar,* 520 F.Supp. 173, 178 (N.D.Ala.1981).

**9.** Thus, in *Sheley v. Alaska Bar Association,* 620 P.2d 640 (Alaska 1980) we initially examined the reason asserted by the ABA for imposing a thirty-day residency requirement on bar examination applicants. According to the ABA, that reason was "to afford the ABA with a reasonable opportunity to investigate an applicant's academic fitness and moral character." *Id.* at 645. Although we concluded that this did further a legitimate state interest, that alone was not sufficient:

> The discrimination which the rule works against nonresidents does not bear a substantial relationship to the end sought by the ABA. This is so because there are less restrictive means, other than residency for a designated period of time in Alaska, that would achieve the legitimate objectives. *See Hicklin,* 437 U.S. at 528, 98 S.Ct. at 2488, 57 L.Ed.2d at 406. For example, if the bar applicant is a nonresident (and that is at whom the rule is aimed), information concerning fitness and character will be found, not in Alaska, but outside of the state.... In addition, the ABA can avail itself of the nationwide investigatory service of the National Conference of Bar Examiners as a less restrictive means.

*Sheley,* 620 P.2d at 645 (footnote omitted).

**10.** This is in accord with the conclusion reached by numerous commentators. E.g., Simson, Discrimination Against Nonresidents and the Privileges and Immunities Clause of Article IV, 128 U.Pa.L.Rev. 379, 390–91 (1979); Note, The Future of State Bar Residency Requirements under the Privileges and Immunities Clause, 26 S.D.L.Rev. 79, 85 (1981); Note, A Constitutional Analysis of State Bar Residency Requirements under the Interstate Privileges and Immunities Clause, 92 Harv.L.Rev. 1461, 1482–83 (1979); Note, Residence Requirements for Initial Admission to the Bar: A Compromise Proposal for Change, 56 Cornell L.Rev. 831, 838 (1971). Indeed, a number of courts have rejected the asserted relationship between residence and legal competence when advanced in support of durational residency requirements, which at least assure some minimum period of exposure to local practice, under the less exacting standard of equal protection. *See, e.g., Potts v. Honorable Justices of Supreme Court of Hawaii,* 332 F.Supp. 1392, 1397–98 (D.Haw.1971); *Lipman v. Van Zant,* 329 F.Supp. 391, 400–01 (N.D.Miss.1971); *Webster v. Wofford,* 321 F.Supp. 1259, 1261 (N.D.Ga.1970); *Keenan v. Board of Law Examiners,* 317 F.Supp. 1350, 1359 (E.D.N.C.1970).

Moreover, the domicile requirement of Rule 5(1)(a) is not substantially related to achieving the legitimate objective of a competent bar. Once admitted, an attorney may immediately move out of Alaska yet retain active membership status.[11] "Such an attorney may never learn local customs or attitudes since this knowledge is gleaned, most often, only after the attorney begins an in-state practice." *Stalland v. South Dakota Board of Bar Examiners*, 530 F.Supp. 155, 160 (D.S.D.1982). In addition, a less restrictive means of ensuring that attorneys, resident and nonresident alike, are well-versed in local law would be to require periodic testing on issues of state law as a condition to continued practice in Alaska.[12] Thus, even were we to accept the ABA's contention that admitting nonresident attorneys would pose a threat to the state bar's legal competence, the discrimination occasioned by Rule 5(1)(a) does not "bear a substantial relationship to the 'evil' they are said to present." *Hicklin v. Orbeck*, 437 U.S. 518, 527, 98 S.Ct. 2482, 2488, 57 L.Ed.2d 397, 405 (1978).

Next, the ABA argues that Alaska residency is necessary to facilitate service of process and communication with other attorneys, and to prevent scheduling and other administrative problems for state courts. We are unpersuaded, however, that these concerns constitute "substantial reasons" for completely excluding nonresidents from admission to the bar.[13] *Cf. Sosna v. Iowa*, 419 U.S. 393, 406, 95 S.Ct. 553, 560, 42 L.Ed.2d 532, 544–45 (1975). Facilitating service of process could just as easily be accomplished by requiring nonresident attorneys to appoint an in-state agent for such service,[14] or by resorting to the mails.[15] The existence of telephones already provides an effective means to communicate with other counsel. In addition, we fail to see how the asserted problem of communication between resident and nonresident counsel differs materially from that confronting a Fairbanks attorney trying a case in Juneau. For the same reason, the ABA's concern that admitting nonresident attorneys would create scheduling and other administrative problems for state courts is likewise unconvincing. In sum, the ABA has failed to demonstrate that nonresident attorneys constitute a "peculiar source" of these evils, *see Stalland v. South Dakota Board of Law Examiners*, 530 F.Supp. 155, 159 (D.S.D.1982), or that these potential problems cannot be dealt with by less restrictive means.

Finally, the ABA contends that the domicile requirement of Rule 5(1)(a) assures that members of the state bar are readily amenable to discipline and fee arbitration and are available to serve on the committees that administer these procedures. While we agree that the state has a valid interest in regulating the conduct of the attorneys it admits to practice, we are unable to perceive how nonresidents threaten that interest such that blanket discrimination against

---

**11.** *See* note 5 *supra.*

**12.** *See* Simson, Discrimination Against Nonresidents and the Privileges and Immunities Clause of Article IV, 128 U.Pa.L.Rev. 379, 391 (1979). The ABA's concern over lack of familiarity with local practice and procedure is, in our view, a problem which could be said to exist with resident attorneys who seldom go to court, focusing instead on an office practice. As noted by one commentator: "The basic problem appears to be caused not by geography but by the absence in the United States of separate admission and examination procedures for 'office' and for courtroom practice." Note, A Constitutional Analysis of State Bar Residency Requirements under the Interstate Privileges and Immunities Clause of Article IV, 92 Harv.L.Rev. 1461, 1486 (1979).

**13.** *See Stalland v. South Dakota Bd. of Bar Examiners*, 530 F.Supp. 155, 159 (D.S.D.1982); *Gordon v. Comm. on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 645, 397 N.E.2d 1309, 1313 (1979).

**14.** *Gordon v. Comm. on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 646, 397 N.E.2d 1309, 1314 (N.Y.1979); *cf. Hess v. Pawloski*, 274 U.S. 352, 71 L.Ed. 1091 (1927).

**15.** *See* Alaska R.Civ.P. 4(h); Simson, Discrimination Against Nonresidents and the Privileges and Immunities Clause of Article IV, 128 U.Pa. L.Rev. 379, 392 (1979).

them is required. As one commentator has noted:

> Any correlation between ethical behavior and in-state residence . . . is marginal at best. Many nonresidents can be expected to practice honestly in the state, and some resident attorneys can be expected to do so reprehensibly, because the individual lawyer's personal code of ethics and moral fortitude influence behavior much more than his or her place of residence.

Simson, *Discrimination Against Nonresidents and the Privileges and Immunities Clause of Article IV*, 128 U.Pa.L.Rev. 379, 391 (1979); *See Piper v. Supreme Court of New Hampshire*, 539 F.Supp. 1064, 1072 (D.N.H.1982) ("[T]he good reputation of the attorney and the bar generally is a function of where an individual's heart is, not where her house is"). Moreover, the state has available to it numerous less onerous alternatives to the discrimination visited by Rule 5(1)(a) on nonresidents:

> [R]emedies currently available to safeguard against abuses by resident attorneys—contempt, disciplinary proceedings and malpractice actions—can be applied

with equal force against miscreant nonresident attorneys.[16]

*Gordon v. Committee on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 646, 397 N.E.2d 1309, 1314 (1979). Finally, the need for bar members to serve on committees that administer disciplinary and fee dispute procedures could be met by a requirement that nonresident attorneys, as a condition of membership, make themselves available for such service.

In conclusion, we hold that the domicile requirement imposed by Bar Rule 5(1)(a) is unconstitutional.[17] It denies qualified bar applicants such as Noll the right to pursue their chosen occupation solely on the basis of residence. This the state may not do, for it is precisely "the sort of economic protectionism that the privileges and immunities clause of the United States Constitution was designed to prevent." *Sheley v. Alaska Bar Association*, 620 P.2d 640, 646 (Alaska 1980).

The decision of the Alaska Bar Association Board of Governors denying Jonathan Noll admission to the Alaska Bar for failure to satisfy the domicile requirement of Bar Rule 5(1)(a) is REVERSED.

**16.** Acquiring personal jurisdiction over nonresident attorneys in suits for wrongs committed while practicing in Alaska should not pose any difficulty to in-state clients given the long arm jurisdiction reflected by AS 09.05.015. *See Volkswagenwerk, A. G. v. Klippan, GmbH*, 611 P.2d 498, 500 (1980). Moreover, under Bar Rule 25, providing for reciprocal discipline, nonresident attorneys admitted to the bar of another state may well be subject to "the greater scrutiny of courts and attorneys in more than one state." *Stalland v. South Dakota Bd. of Bar Examiners*, 530 F.Supp. 155, 161 (D.S.D. 1982).

**17.** We reject the ABA's contention that the United States Supreme Court's summary affirmance of *Wilson v. Wilson*, 416 F.Supp. 984 (D.Or.1976), aff'd mem., 430 U.S. 925, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977), which upheld the Oregon simple residency requirement for bar admission, compels a contrary conclusion, for the reasons given by the court in *Stalland v. South Dakota Bd. of Bar Examiners*, 530 F.Supp. 155, 161–62 (D.S.D.1982):

*Wilson*, however, was decided before the Supreme Court, in *Hicklin* and *Baldwin*, reaffirmed the role of article IV, § 2 in reviewing state discrimination against nonresidents. The

district court never addressed the Oregon residency requirement in light of the standards set out in *Hicklin*. Nor does this Court consider itself bound by the Supreme Court's summary affirmance of *Wilson*. Too often the Supreme Court has explained that the precedential effect of a summary affirmance is limited and can extend no farther than the precise issues presented and necessarily decided by those actions. *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977). A summary disposition affirms only the judgment of the court below, *Fusari v. Steinberg*, 419 U.S. 379, 391–92, 95 S.Ct. 533, 540–41, 42 L.Ed.2d 521 (1975), and "no more may be read into [the court's] action than was essential to sustain that judgment." *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979). Since the district court in *Wilson* did not mention the privileges and immunities clause, the precise issue now before this Court was neither adequately presented to nor necessarily decided by the Supreme Court.

*See also Piper v. Supreme Court of New Hampshire*, 532 F.Supp. 1064 (D.N.H.1982).